UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROMMEL LEWIS and KEISHA KNIGHT-
LILLY,

                              Plaintiffs,

v.

THOMS, Superintendent Security Five Points
Correctional Facility; AMY LAMANNA,
Superintendent Five Points Correctional
Facility; MICHAEL KIRKPATRICK,
Superintendent Clinton Correctional Facility;
UHLER, Superintendent Upstate Correctional
Facility; S. PETER FELDSTEIN
Administrative Judge; KEVIN BRUEN,
Deputy Counsel Commissioner
N.Y.S.D.O.C.C.S.; KATHY SHEEHAN,
Deputy Asst. Counsel N.Y.S.D.O.C.C.S.;
NANCY J. HEYWOOD Deputy Counsel
N.Y.S.D.O.C.C.S.; DANIELLE D. MAY,
Asst. Counsel N.Y.S.D.O.C.C.S.;
ANTHONY J. ANNUCCI, Acting
Commissioner N.Y.S.D.O.C.C.S.;
ANTHONY L. POLIZZI, Hearing Office
Administrator N.Y.S.D.O.C.C.S.; and Jane
Doe/John Doe, O.S.I. Investigators
N.Y.S.D.O.C.C.S.,[1]

                              Defendants.

---

21-CV-6738-FPG

ORDER

## INTRODUCTION

*Pro se* Plaintiff Rommel Lewis ("Lewis") is currently incarcerated at Elmira Correctional

Facility ("Elmira") in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"). He and *pro se* Plaintiff Keisha Knight-Lilly ("Knight-

Lilly") bring this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated

---

[1] The Clerk of Court is directed to amend the official caption to conform to the above.

their First, Fifth, Eighth, and Fourteenth Amendment rights by indefinitely suspending Knight-Lilly's visitation privileges which has apparently prevented them from marrying.  ECF No. 1. Plaintiffs have paid the filing fee.  For the reasons discussed below, Plaintiffs' Second Amended Complaint,[2] ECF No. 23, is dismissed with prejudice except that (1) the Fourteenth Amendment due process claim based on the alleged denial of the right to marry is dismissed without prejudice as premature; and (2) the claim that the indefinite suspension of Knight-Lilly's visitation privileges violates the right of association, grounded in the First Amendment and/or Fourteenth Amendment, may proceed to service against former Upstate Correctional Facility Superintendent Donald Uhler ("Uhler"), former Five Points Superintendent Matthew Thoms ("Thoms"), and Five Points Superintendent Amy Lamanna ("Lamanna") to the extent it asserts retrospective relief against these defendants in their individual capacities.

## DISCUSSION

### I.      Section 28 U.S.C. § 1915A and Screening of Prisoner Complaints

Under 28 U.S.C. § 1915A(a), the Court must screen the Second Amended Complaint as to Lewis because he is a "prisoner" as defined in 28 U.S.C. § 1915(h).  Section 1915A(b) states that the Court "shall dismiss" a complaint, or any portion of the complaint, if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee."  *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

---

[2] Although the pleading, ECF No. 23, is captioned as a First Amended Complaint, it is the Second Amended Complaint, and the Court will refer to it as such in this Order.

"An action is 'frivolous' when either: (1) 'the "factual contentions are clearly baseless,"

such as when allegations are the product of delusion or fantasy;' or (2) 'the claim is "based on an

indisputably meritless legal theory."'" *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)).  Examples

of the latter class are claims "against which it is clear that the defendants are immune from suit,

and claims of infringement of a legal interest which clearly does not exist." *Neitzke v. Williams*,

490 U.S. 319, 327 (1989) (citation omitted).

"A complaint may be dismissed as malicious where it 'was not to rectify any cognizable

harm, but only to harass and disparage' the defendant." *Preston v. New York*, 223 F. Supp. 2d 452,

462 (S.D.N.Y. 2002) (quoting *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) (dismissing

complaint against federal prosecutor who obtained conviction against the plaintiff as frivolous and

malicious).

In evaluating whether a complaint "fails to state a claim upon which relief may be granted"

under 28 U.S.C. § 1915A(b)(1), the Court uses "the same standard as a motion to dismiss brought

under Rule 12(b)(6)." *Preston*, 223 F. Supp. 2d at 462 (citing *Duamutef v. Morris*, 956 F. Supp.

1112, 1115 (S.D.N.Y. 1997)); *see also Santos v. Keenan*, No. 17-CV-0984 LJV-HKS, 2020 WL

2859202, at *2 n.4 (W.D.N.Y. Feb. 6, 2020) ("When screening a *pro se* complaint under 28 U.S.C.

§ 1915(e)(2)(B)(ii) and 1915A(b)(1)—i.e., failure to state a claim upon which relief can be

granted—, a district court applies the same standard set forth in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that it does to a motion to

dismiss.") (collecting cases), *report and recommendation adopted*, No. 17-CV-984, 2020 WL

1025189 (W.D.N.Y. Mar. 3, 2020).

3

The Court "assum[es] all well-pleaded, nonconclusory factual allegations in the complaint to be true[,]" *Harrington v. County of Suffolk*, 607 F.3d 31, 33 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678), but it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim will be considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Even after *Twombly*, though, [courts] remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## II.    *Sua Sponte* Dismissal of Fee-Paid Complaints

In the Second Circuit, a district court lacks the inherent authority to dismiss, on its own motion and without any notice or opportunity to be heard, a fee-paid complaint for failure to state a claim on which relief may be granted. *See*, *e.g.*, *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (stating that "'[t]he district court has the power to dismiss a complaint for failure to state a claim,'" "so long as the plaintiff is given notice and 'an opportunity to be heard'") (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980); *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir.1991) (per curiam)). Here, Plaintiffs were advised in the Court's previous orders that their case would be dismissed without prejudice if they failed to timely file an amended complaint that remedied the pleading defects identified by the Court. *See*, *e.g.*, ECF No. 16 at 15-16. Thus, they received notice of the consequences of failing to allege plausible constitutional claims for relief and two opportunities to be heard, i.e., the chance to file two amended complaints.

"[A]lthough a district court may not *sua sponte* dismiss a *pro se* plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) where (as here) that *pro se* plaintiff is neither a prisoner nor proceeding *in forma pauperis*, a district court may always *sua sponte* dismiss a *pro se* plaintiff's complaint based on frivolousness." *LaSpisa v. CitiFinancial Co.*, No. 19-CV-0228 (GTS/DJS), 2020 WL 2079410, at *3 (N.D.N.Y. Apr. 30, 2020) (citing *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[W]e hold that district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances.")).  In addition, a district court "has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that . . . the Court lacks subject-matter jurisdiction[.]" *Li v. Dillon*, No. 21-CV-5735 (VEC), 2021 WL 3146033, at *1 (S.D.N.Y. July 23, 2021) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

## III.   The Second Amended Complaint's Allegations

The following recitation of facts is drawn from the Second Amended Complaint, the contents of which must be accepted as true for purposes of initial review under 28 U.S.C. § 1915A(b).[3]

Knight-Lilly is a former DOCCS corrections officer at Greenhaven Correctional Facility. She resigned her position on December 21, 2015.  ECF No. 23 at 26 (Plaintiff's Exhibit ("Ex.") C).

---

[3] Attached to the Second Amended Complaint are documents labeled as Exhibits A through O, ECF No. 23 at 20-80, to which Plaintiffs cite throughout the Second Amended Complaint.  "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

On February 2, 2016, Lewis and Knight-Lilly submitted a marriage request to Defendant Michael Kirkpatrick, Superintendent of Clinton Correctional Facility ("Clinton"), where Lewis was confined. ECF No. 23 ¶ 9. On February 4, 2016, Kirkpatrick approved the request to get married. *Id.* ¶ 10. However, on February 6, 2016, Kirkpatrick issued a letter indefinitely suspending Knight-Lilly's visitation privileges with, and ability to send packages to, *any* inmate in DOCCS custody. *Id.* ¶ 12 & *id.* at 21 (Ex. A). Kirkpatrick's determination was "[b]ased on an Office of Special Investigations investigation". *Id.*

On February 6, 2016, or February 7, 2016, Lewis was interviewed by Investigator John Doe, Office of Special Investigations ("OSI"). *Id.* ¶¶ 15-16. Lewis then was transferred to Downstate Correctional Facility, where he was interviewed by "OSI Investigator Jane Doe/John Doe of the New York State Police Bureau of Criminal Investigation"[4] in early March of 2016. *Id.* ¶ 17. Afterwards, Lewis was transferred back to Clinton. *Id.* ¶ 18.

Meanwhile, Knight-Lilly appealed Kirkpatrick's decision suspending her visitation privileges. *Id.* ¶ 22. Defendant Nancy Heywood, DOCCS Deputy Counsel, issued a letter on May 26, 2016, stating that there was an ongoing OSI investigation into Knight-Lilly's interactions with Lewis while she was employed at Green Haven Correctional Facility. *Id.* ¶ 24 & *id.* at 26 (Ex. C).

---

[4] Rule 10(a) of the Federal Rules of Civil Procedure provides that "the title of the complaint must name all the parties." "A party not named in the caption of the complaint is not a party to the action." *McQueen v. United States*, No. 919CV0998TJMCFH, 2019 WL 4221545, at *4 n.4 (N.D.N.Y. Sept. 5, 2019) (citing *Abbas v. United States*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants for [which] claims)). Here, "John Doe of the New York State Police Bureau of Criminal Investigation" is not included in the caption of the Second Amended Complaint. Nor do Plaintiffs identify him as a defendant in the body of the Second Amended Complaint. The Court will not construe the Second Amended Complaint to assert any cause of action against John Doe of the New York State Police Bureau of Criminal Investigation or any individual not named in the caption or identified as a defendant. *See Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007) (stating that individuals not named in the caption of the complaint "will not be defendants in the case").

Because of the ongoing investigation, Heywood found, Kirkpatrick appropriately invoked his discretionary power to deny Knight-Lilly entrance to Clinton. *Id.*

In July 2016, Lewis filed a petition under New York Civil Practice Law and Rules Article 78 in New York State Supreme Court, Clinton County, seeking restoration of Knight-Lilly's visitation privileges. *Id.* ¶ 35. Defendant S. Peter Feldstein, Acting Supreme Court Justice, denied the Article 78 petition in a decision and order dated November 7, 2016, finding that Lewis lacked standing to challenge the suspension of Knight-Lilly's visitation privileges. *Id.* ¶¶ 36, 38, 39 & *id.* at 79 (Ex. O).

In November 2016, Knight-Lilly filed her own Article 78 proceeding. In June 2017, having not received a decision on her petition, Knight-Lilly drove to the courthouse and was told that her petition was among a number of documents that had been destroyed during a recent fire. *Id.* ¶ 41. Although she had an extra copy of her petition, she was not allowed to file it by hand delivery. *Id.* ¶ 42

Defendant Anthony L. Polizzi, Commissioner's Hearing Officer, conducted a hearing on Knight-Lilly's appeal on August 14, 2018. *See* ECF No. 23 at 41-43 (Ex. I). At the hearing, DOCCS introduced Kirkpatrick's letter notifying Knight-Lilly of the suspensions, a DVD of Knight-Lilly's recorded interview with the New York State Police Bureau of Criminal Investigation and OSI, and twenty-one pages of transcripts of telephone conversations between a female and an inmate whom DOCCS identified as "Knight-Lilly" and "Lewis," respectively.[5] *See id.* at 42 (Ex. I). Polizzi made a number of factual findings, including that Knight-Lilly admitted

---

[5] The transcripts are attached as an exhibit, *see* ECF No. 23 at 54-74 (Ex. M). Lewis notes that the inmate is listed as having Department Identification Number ("DIN") 00A3684, but his DIN is 01B0633. A search of DIN 00A3684 on the DOCCS Incarcerated Lookup indicates that it is assigned to an individual named Danny Maldonado, who currently is confined at Attica Correctional Facility. A search of DIN 01B0633 returns Lewis's name. *See* https://nysdoccslookup.doccs.ny.gov/ (last visited Dec. 15, 2022).

to an inappropriate relationship with Lewis during her recorded interview with the New York State Police and OSI. *Id.* at 43 (Ex. I). In addition, he noted, Knight-Lilly testified at the hearing that she had an "inappropriate relationship and conduct with Lewis." *Id.*[6]

Lewis was transferred to Upstate Correctional Facility on March 5, 2019, and Uhler allowed him to visit with Knight-Lilly on March 28-29, 2019. ECF No. 23 ¶ 32. On April 1, 2019, Uhler notified Knight-Lilly that her visiting privileges were suspended indefinitely because she was a former DOCCS employee. *Id.* & *id.* at 51 (Ex. L).

In October 2019, Lewis was transferred to Five Points, where Thoms told Lewis during a conversation on January 28, 2020, that he was not changing Knight-Lilly's visitation status. ECF No. 23 ¶ 46. Thoms commented that Annucci and Heywood "said that you guys aren't fit to get visitation, per Uhler 'Lilly is a former D.O.C.C.S. employee.'" *Id.*

Lamanna succeeded Thoms as Superintendent of Five Points. *Id.* ¶ 49. In April or May 2021, Lewis spoke to Lamanna about the lack of response to his March 20, 2021 grievance regarding the suspension of Knight-Lilly's visitation privileges. *Id.* ¶¶ 50-51. Lamanna told Lewis that she had been informed by Heywood and DOCCS Counsel's Office that Knight-Lilly is a former employee "so you guys aren't getting married or visits here." *Id.* ¶ 51. Lamanna suggested that Lewis put in for a transfer and tell Knight-Lilly to make a new request for visitation at whatever facility he was transferred to. *Id.* ¶ 53. Lamanna also told Lewis that her Inmate Grievance Review Committee staff had been directed to return any grievance he submitted about Knight-Lilly's visitation privileges. *Id.* ¶ 52.

---

[6] In a declaration attached to the Second Amended Complaint, Knight-Lilly states that "at NO TIME while in the employment of [DOCCS] as a Correctional Officer did she EVER ADMIT to An Inappropriate Relationship with inmate Rommell [sic] Lewis". ECF No. 23 at 80 (Ex. O-1) (capital letters in original). She also "[c]ategorically [d]en[ies]" that any of the phone conversations reflected in the DOCCS transcripts ever took place. *Id.*

Based on the foregoing allegations, Plaintiffs have asserted seven enumerated causes of action in the Second Amended Complaint. *See* ECF No. 23 at 16-18. The first and fourth causes of action relate to the alleged violation of state-created regulations, grievance procedures, and directives. The second, third, and sixth causes of action pertain to the suspension of Knight-Lilly's visitation privileges and its effect on Plaintiffs' ability to get married. The fifth cause of action is directed to Feldstein only and asserts that he denied Plaintiffs their right of access to the courts. Finally, the seventh cause of action claims that all Defendants conspired with each other to violate Plaintiffs' constitutional rights. Plaintiffs seek compensatory and punitive damages, restoration of Knight-Lilly's visitation privileges, permission to have a marriage ceremony, participation in the Family Reunion Program, and an apology letter. *Id.* at 18-19.

## III.   Analysis of Second Amended Complaint

### A.  General Legal Principles

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest

on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).

### B. The Second Amended Complaint Does Not Allege the Personal Involvement of Sheehan, May, Bruen, Annucci, and the John Doe/Jane Doe Defendants

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit clarified that following *Iqbal*, "there is no special rule of liability for supervisors." *Id.* at 618. "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). This means a supervisory defendant does not personally violate a plaintiff's constitutional rights simply "by reason of [that defendant's] supervision of others who committed the violation." *Id.* at 619. Rather, the constitutional violation "must be established against the supervisory official directly." *Id.* at 618.

Sheehan, as DOCCS Deputy Counsel, simply sent a letter to Knight-Lilly on May 31, 2018, informing her that the OSI investigation was closed and that her appeal would be scheduled for the next available hearing. ECF No. 23 at 35 (Ex. F). May, Assistant Counsel for DOCCS, sent two similarly innocuous letters to Knight-Lilly. One informed her of the hearing date on her appeal, *id.* at 37 (Ex. G); the other provided a list of the evidence that DOCCS intended to present at the hearing, *id.* at 39 (Ex. H). Bruen, DOCCS Deputy Commissioner and Counsel, appears only as an addressee on the memorandum-decision from Polizzi, the hearing officer, to Knight-Lilly regarding her appeal. *Id.* at 41 (Ex. I). These allegations do not suggest that Sheehan, May, or Bruen had any involvement in the decision to suspend Knight-Lilly's visitation privileges.

10

Therefore, Plaintiffs have not alleged a constitutional violation against Sheehan, May, or Bruen directly.

Turning to the John and Jane Doe defendants, Plaintiffs allege that OSI Investigator John Doe took multiple items out of his cell; however, as discussed below, this allegation does not state a cognizable constitutional claim.  As for OSI Investigator Jane Doe, Plaintiffs assert that she interviewed Lewis in connection with the investigation into their relationship while Knight-Lilly was a DOCCS corrections officer.  However, Lewis admits that he was never subjected to any disciplinary action by DOCCS as a result of the OSI investigation or the New York State Police investigation.  *See* ECF No. 23 ¶¶ 57-58.  Furthermore, neither Lewis nor Knight-Lilly was criminally charged as a result of the investigations.  *See id.*  Therefore, Plaintiffs have not alleged a constitutional violation against OSI Investigators John Doe and Jane Doe directly.

As for Annucci, DOCCS Acting Commissioner, Plaintiffs allege that he "directed" and "condoned" Heywood to render an untimely decision denying Knight-Lilly's appeal.  ECF No. 23 ¶ 24.  There are no allegations that Annucci participated in the review of, and decision by, Heywood on Knight-Lilly's appeal.  Although Annucci supposedly commented to Thoms that Plaintiffs "aren't fit to get visitation," *id.* ¶ 46, that does not amount to an allegation that Annucci was personally involved in reviewing and denying Knight-Lilly's request to Thoms to reinstate her visitation privileges.

The Second Amended Complaint contains no nonconclusory allegations that Sheehan, May, Bruen, Annucci, OSI Investigator John Doe, and OSI Investigator Jane Doe committed any actions that affected Plaintiffs' constitutional rights.  Because the Second Amended Complaint is devoid of any allegations of personal involvement by these defendants, Plaintiffs' claims against them are dismissed as frivolous.  *See Montero v. Travis*, 171 F.3d 757, 761-62 (2d Cir. 1999)

11

("[T]he claim against Travis was properly dismissed as frivolous because Montero never alleged any facts describing Travis's personal involvement in the claimed constitutional violations."). These defendants will be terminated as parties to this action.

### C. The First Amendment Claims Against Feldstein Are Barred by Absolute Judicial Immunity

Under the heading for the Fifth Cause of Action, Plaintiffs assert that Feldstein deprived them of their First Amendment right of access to the courts by denying Lewis's Article 78 petition challenging the suspension of Knight-Lilly's visitation privileges on the basis that Lewis lacked standing. In addition, Plaintiffs allege, after Knight-Lilly's Article 78 petition was destroyed by a fire at the courthouse, Feldstein's clerk informed Knight-Lilly that she could not file a replacement motion "by hand delivery." *Id.*

The Supreme Court has long recognized that "the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 896-97 (1984). It is well settled, however, that "[j]udges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority[.]" *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988). The dismissal of Lewis's Article 78 petition for lack of standing clearly represents an action "taken pursuant to [Feldstein's] judicial power and authority." *Id.*

Likewise, Knight-Lilly was not prevented from filing her own Article 78 petition. Her original petition was accepted for filing but was destroyed in the courthouse fire. Knight-Lilly does not allege that she attempted to refile the Article 78 petition in the same manner in which she filed the original petition. Instead, she simply was informed she could not refile it by hand delivering of a copy of the original to the courthouse. There is nothing in the Second Amended

Complaint that suggests that Knight-Lilly would not be able to file a replacement petition if she followed the same process she used in filing the original petition, which was accepted for filing.

Moreover, there is no suggestion that Knight-Lilly spoke directly to Feldstein when she went to the courthouse to inquire about her Article78 petition.  Instead, the Second Amended Complaint alleges that she communicated with Feldstein's clerk, who is not named in the caption or otherwise identified as a defendant.  ECF No. 23 ¶¶ 41-42.  In any event, even if he were a defendant, "[t]hose 'perform[ing] functions closely associated with the judicial process' receive absolute quasi-judicial immunity."  *Bloom v. New York State Unified Ct. Sys.*, No. 19-CV-7115 (DRH), 2020 WL 6118828, at *5 (E.D.N.Y. Oct. 16, 2020) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)).  "For example, court clerks receive quasi-judicial immunity because their ordinary responsibilities are judicial in nature."  *Id.* (citing *Peker v. Steglich*, 324 F. App'x 38, 39-40 (2d Cir. 2009) (unpublished opn.)).  Even if Feldstein's clerk is "viewed as performing an administrative task," *Rodriguez v. Weprin*, 116 F.3d 62, 67 (2d Cir. 1997), he is entitled to immunity for harms allegedly related to the delay in Knight-Lilly being able to refile her petition. *See Bloom*, 2020 WL 6118828, at *5 (finding that court clerk's actions in allegedly failing to calendar a hearing on plaintiff's reinstatement, losing plaintiff's reinstatement motion, issuing an order holding the motion in abeyance, and ignoring plaintiff's letter requests fell within the scope of her judicial duties and were protected by absolute quasi-judicial immunity).  Whether the individual to whom Knight-Lilly spoke was a court clerk or a law clerk performing judicial functions as an extension of the judge, he is entitled to absolute quasi-judicial immunity.  Plaintiffs' Fifth Cause of Action asserting that Feldstein violated their First Amendment right of access to the courts is dismissed as frivolous.  *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any

claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

### D. The Statute of Limitations and Claims Implicating the Right of Association and the Right to Marry

The Second Amended Complaint challenges the following decisions regarding Knight-Lilly's visitation privileges and Plaintiffs' ability to get married:

- Kirkpatrick's February 6, 2016 decision indefinitely suspending visitation privileges, ECF No. 23 ¶ 12 & *id.* at 21 (Ex. A);
- Heywood's May 26, 2016 decision denying the appeal of Kirkpatrick's decision, *id.* ¶¶ 24-25 & *id.* at 26-27 (Ex. C);
- Polizzi's October 11, 2018 decision affirming Kirkpatrick's decision, *id.* ¶¶ 30-31 & *id.* at 41-43 (Ex. I);
- Uhler's April 1, 2019 decision continuing the indefinite suspension of visitation privileges, *id.* ¶¶ 33-34 & *id.* at 51-52 (Ex. L);
- Thoms's decision continuing the indefinite suspension of visitation privileges, issued sometime between November 14, 2019, and January 23, 2020, *id.* ¶ 46 & *id.* at 47 (Ex. K); and
- Lamanna's decision denying Knight-Lilly's "February 2021 appeal," *id.* ¶ 50, which was relayed verbally to Lewis in April 2021, *id.* ¶ 51.

The Second Circuit has held that "a complaint may be dismissed as frivolous prior to service where it is clear from the face of the complaint that the claim is time-barred under the applicable statute of limitations[.]" *Smith v. New York City Transit Auth. (NYCTA)*, 201 F.3d 432, 432 (2d Cir. 1999) (unpublished opn.) (citing *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under [former 28 U.S.C.] Section 1915(d), may be based on a defense that appears on the face of the complaint.")).

As noted in the Court's previous Order, ECF No. 16, "[t]he statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F.3d 176,

181 (2d Cir. 2009).  Ordinarily, the accrual date of a Section 1983 claim is "when the plaintiff knows or has reason to know of the harm." *Id.*  Here, Plaintiffs filed their Complaint on November 21, 2021.  ECF No. 2 at 17.  However, the first decision suspending Knight-Lilly's visitation privileges occurred more than five years earlier, on February 6, 2016.

Under New York law, a plaintiff may rely on the doctrine of equitable tolling to overcome a statute of limitations defense when he or she "was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794, 793 N.Y.S.2d 565 (3d Dep't 2005) (citation omitted)).  "Due diligence" by the plaintiff in bringing the federal court action, however, "is an essential element of equitable relief." *Id.*

The Court's previous Order pointed out the timeliness issues regarding at least some of the visitation claims and gave Plaintiffs the opportunity to allege facts in support of an equitable defense to the limitations period.  However, Plaintiffs failed to do so in their Second Amended Complaint, which contains no factual allegations suggesting they were wrongly induced to refrain from filing in federal court in a timely manner or that they acted with due diligence in commencing this action on time.  Notably, Lewis and Knight-Lilly each filed an Article 78 proceeding in state court challenging the visitation suspension, some four years before commencing this action. Plaintiffs have offered no explanation as to why they were able to file these state court actions but could not file this action before expiration of the limitations period.  The Court therefore finds that equitable tolling is unavailable to them.

Finally, there is no basis to apply the continuing violations doctrine, an "exception to the normal knew-or-should-have-known accrual date." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)).  The continuing

15

violations doctrine does not apply to "discrete unlawful acts, even where those discrete acts are a part of a 'serial violation[ ],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (alteration in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)).  A continuing violation cannot "be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris*, 186 F.3d at 250.

The Court finds that each decision suspending Knight-Lilly's visitation privileges or affirming the suspension of privileges was a discrete act, and that any constitutional claim would have accrued on the date of issuance.  *See Ayers v. Esgrow*, No. 12-CV-656V(F), 2020 WL 3924493, at *11 (W.D.N.Y. June 12, 2020) (holding that continuing violation doctrine was inapplicable to inmate's First Amendment claim based on his removal from the religious clerk position), *report and recommendation adopted*, No. 12-CV-656, 2020 WL 3893799 (W.D.N.Y. July 10, 2020); *see also Gonzalez*, 802 F.3d at 222 (finding that continuing violation doctrine did not apply to extend limitations period for federal prisoner's First Amendment retaliation claim against warden for allegedly placing prisoner under administrative detention in special housing units in retaliation for statements prisoner made concerning warden; "[t]he mere fact that the effects of retaliation [in violation of the First Amendment] are continuing does not make the retaliatory act itself a continuing one") (quoting *Deters v. City of Poughkeepsie*, 150 F. App'x 10, 12 (2d Cir. 2005) (summary order)).

Moreover, Plaintiffs have not alleged "compelling circumstances" for application of the continuing violations doctrine.  *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) ("[C]ourts in the Second Circuit 'have been loath to apply [the continuing violation doctrine] absent a showing of compelling circumstances.'" (internal quotation marks

omitted in original (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006))).   Accordingly, the Court finds that any claims based on Kirkpatrick's February 6, 2016 decision; Heywood's May 26, 2016 decision; and Polizzi's October 11, 2018 decision are time-barred.   *See Pino*, 49 F.3d at 54 (affirming district court's pre-service dismissal of a Section 1983 complaint where the plaintiff's injuries occurred "well outside the applicable three-year limitations period, there [were] no applicable tolling provisions as a matter of law, and plaintiff [had] alleged no facts indicating a continuous or ongoing violation of his constitutional rights." (internal citation omitted)).   However, Uhler's April 1, 2019 decision continuing the indefinite suspension of visitation privileges; Thoms's decision continuing the indefinite suspension of visitation privileges, issued sometime between November 14, 2019, and January 23, 2020; Lamanna's decision denying Knight-Lilly's "February 2021 appeal," are not time-barred because they occurred within three years of the filing of the Complaint.

### E.  Eleventh Amendment Immunity

Even though the Court's prior Order dismissed the official-capacity damages claims, Plaintiffs have again asserted they are suing all defendants in their official as well as individual capacities.

"[T]he Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'"  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 235 (2d Cir. 2006)).   New York has not waived its Eleventh Amendment immunity to suit in federal court.  *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).   And in

17

enacting 42 U.S.C. § 1983, Congress did not abrogate a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 338-39 (1979).

The Eleventh Amendment's grant of immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods*, 466 F.3d at 236 (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). Therefore, Plaintiffs' Section 1983 claims for money damages against Uhler, Thoms, and Lamanna in their official capacities are barred by the Eleventh Amendment and must be dismissed. *See Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (stating that "suits against states and their officials seeking damages for past injuries are firmly foreclosed by the Eleventh Amendment").

"[S]tate officials can be subject to suit in their official capacities for injunctive or other prospective relief." *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005). To the extent Plaintiffs seek prospective injunctive relief against Uhler, Thoms, and Lamanna in their official capacities, such claims are not barred by the Eleventh Amendment. However, "it is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (citing *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989); *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986)). "On the other hand, the transfer does not moot an action for damages." *Id.* Since Lewis is no longer incarcerated at either Upstate or Five Points, Plaintiffs cannot obtain injunctive relief from Uhler, Thoms, and Lamanna for their allegedly unconstitutional actions or omissions while they were superintendents at Upstate or Five Points. "This result flows logically from the more generalized proposition that 'an actual controversy must be extant at all stages of the case, not just at the time the complaint is filed.'" *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) (quoting *Beyah*, 789 F.2d at 988).

Pursuant to DOCCS regulations, a person whose visitation privileges have been suspended indefinitely may request reconsideration of the suspension from the facility superintendent. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 201.6(a) ("In the event a visitor or inmate's visiting privileges have been suspended for a term over two years or indefinitely suspended, such person may request a reconsideration at any time after it has been in effect for one year, and on an annual basis thereafter, by writing to the superintendent of the facility housing the inmate to be visited."). Since Lewis is no longer housed at the facilities supervised by Uhler, Thoms, and Lamanna, who are the sole remaining defendants, there is no live controversy with them. Plaintiffs' claims for injunctive relief are dismissed as moot. *See Day v. Chaplin*, 354 F. App'x 472, 473-74 (2d Cir. 2009) (unpublished opn.) (agreeing with the district court that inmate's claims for injunctive relief related to his treatment at one correctional institution had been rendered moot where inmate was no longer housed at facility where treatment was provided).

Finally, the Eleventh Amendment does not bar suits against state officials in their individual capacities. *See Huminski*, 396 F.3d at 70 (stating that state officials may be sued under Section 1983 in their individual capacities for both prospective and retrospective relief). To the extent Plaintiffs sue Uhler, Thoms, and Lamanna in their individual capacities for retrospective relief, such claims are not barred by the Eleventh Amendment; nor have they been mooted by Lewis's transfers.

### F.  The Second Cause of Action Alleging a Denial of the Right to Marry Under the Fourteenth Amendment Is Premature

Under the Supreme Court's precedents, "it is clear that prisoners have a fundamental right to marry." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citing *Turner v. Safley*, 482 U.S. 78, 95 (1987)). That said, "[t]he right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration." *Turner*, 482 U.S. at 95.

19

As noted above, Plaintiffs allege that they requested permission to marry on February 2, 2016, in accordance with DOCCS Directive #4201, and Kirkpatrick granted the request. ECF No. 23 ¶¶ 9-10. On February 6, 2016, Kirkpatrick issued the notice of indefinite suspension of Knight-Lilly's visitation privileges. *Id.* ¶ 12. However, the Second Amended Complaint does not allege that Kirkpatrick or any other DOCCS official has ever rescinded Kirkpatrick's grant of permission for Lewis and Knight-Lilly to get married.

The indefinite suspension of Knight-Lilly's visitation privileges undoubtedly makes it more difficult for the marriage ceremony to occur, but itdoes not prohibit Lewis and Knight-Lilly from marrying. *See Post v. Mohr*, No. 1:11 CV 1533, 2012 WL 76894, at *10 (N.D. Ohio Jan. 10, 2012) ("The challenged decision [terminating visitation privileges] in this case, however, does not prohibit Mr. Post[, an inmate,] from marrying Ms. Lynch."). As the district court observed in *Post*, "[a]lthough the denial of visitation privileges may make it more difficult for the marriage to occur, they are two separate inquiries." *Id.* This is because "[i]t is possible for arrangements to be made to accommodate the marriage ceremony, without permanent reinstatement of [Knight-Lilly's] visitation privileges." *Id.* Thus, "[t]he focus of this inquiry must be whether any of the named defendants denied [Lewis]'s request to marry [Knight-Lilly]." *Id.* The comment allegedly made by Lamanna that Plaintiffs "aren't getting married or visits" at Five Points, *see* ECF No. 23 ¶ 51, was made in reference to an appeal filed by Knight-Lilly in February 2021, regarding the suspension of her visitation privileges. *See id.* ¶ 50. Plaintiffs do not allege that there was a formal request made to Lamanna regarding their wish to have a marriage ceremony.

Therefore, to the extent Plaintiffs allege that they were denied permission to marry, the Court finds that the claim is premature, and the Court lacks subject matter jurisdiction over it. *See, e.g.*, *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998) ("Ripeness is a

constitutional prerequisite to exercise of jurisdiction by the federal courts."). The claim asserting

the denial of the right to marry in violation of the Fourteenth Amendment accordingly is dismissed

without prejudice. *See Dixon v. Cain*, No. CV 14-0451-JJB-RLB, 2015 WL 13309343, at *3

(M.D. La. Sept. 2, 2015) (dismissing plaintiff-inmate's claim asserting the denial of the

fundamental right to marry as premature where neither he nor his fiancée, a former prison

employee had "formally requested authorization from prison officials to marry and that prison

officials have refused that request"), *report and recommendation adopted*, No. CV 14-451-JJB-

RLB, 2015 WL 13439759 (M.D. La. Sept. 21, 2015); *see also id.* at *4 (noting that prison officials

had not been "afforded an opportunity to potentially exercise discretion and waive the 6-month

visitor-list requirement so as to allow the plaintiff and [his fiancée] to marry") (citing *Post*, 2012

WL 76894, at *10-11 (rejecting an inmate's claim regarding interference with his right to marry

where there was no showing that any named defendant had denied a formal request to marry and

where the inmate had made no reference to marriage in his formal request to add his proposed

spouse to his visitor's list); *Edge v. Ferrell*, Civil Action No. 06-0710-WS-C, 2008 WL 942038,

at *7 (S.D. Ala. Apr. 7, 2008) (finding no violation of the right to marry where prison officials

denied prisoner's informal requests)).

### G. The Third and Sixth Causes of Action Asserting Violations of the First, Fourteenth, and Eighth Amendments Based on the Indefinite Suspension of Knight-Lilly's Visitation Privileges Are Dismissed in Part and Allowed to Proceed in Part

Plaintiffs allege that the DOCCS Defendants violated their First, Fourteenth and Eighth

Amendment rights by indefinitely suspending Knight-Lilly's visitation privileges. *See* ECF No.

23 at 16-17.

### 1. The Right of Association

The Supreme Court "first recognized" the "right to intimate association" in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), "a case brought by a civic organization challenging a Minnesota statute prohibiting the group from excluding women." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 57 (2d Cir. 2014) (citing *Roberts*, 468 U.S. at 615-17). *Roberts* "addressed the claim under the 'constitutionally protected "freedom of association,"' which exists in 'two distinct senses.'" *Matusick*, 757 F.3d at 57 (quoting *Roberts*, 468 U.S. at 617). The first is "the choice to 'enter into and maintain certain intimate human relationships [without] undue intrusion by the State.'" *Id.* (alteration in original) (quoting *Roberts*, 468 U.S. at 617). The second is "the right to associate with others 'for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Id.* (quoting *Roberts*, 468 U.S. at 617-18).

Plaintiffs are seeking freedom to associate for purposes of maintaining an intimate human relationship as betrothed individuals rather than for purposes of engaging in expressive conduct. Thus, it appears that this case implicates the first rather than the second permutation of the right of association. *Cf. Matusick*, 757 F.3d at 57 (harassment of white county water authority employee by his supervisors and co-workers based on his interracial relationship with African-American woman violated employee's First Amendment right to intimate association, even though they were not married, where employee and woman were involved in long-term romantic relationship and held themselves out as engaged, and their relationship at time of events at issue was integral part of their eventual choice to enter into formal, legal bonds of marriage).

"[N]o matter the constitutional footing, the 'freedom of association is among the rights least compatible with incarceration,'" *Desper v. Clarke*, 1 F.4th 236, 243 (4th Cir. 2021) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003)), *cert. denied*, 142 S. Ct. 811 (2022), "because '[t]he

concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution.'" *Id* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977)). Furthermore, "[i]n the prison context, the visitor's rights are, by necessity, tied to those of the inmate." *Sealey v. Olszewski*, No. 14-CV-3S, 2015 WL 9484521, at *4 (W.D.N.Y. Dec. 29, 2015) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 410 n.9 (1989) (rejecting separate standards for cases implicating the rights of non-inmates)); *see also Keeney v. Heath*, 57 F.3d 579, 581 (7th Cir. 1995) ("[T]he Supreme Court [has] made clear that, so far as challenges to prison regulations as infringing constitutional rights are concerned, the standard is the same whether the rights of prisoners or of nonprisoners are at stake."); *Blair v. Loomis*, 1 F. Supp. 2d 769, 773 (N.D. Ohio 1998) ("The rights of [a prisoner's] relatives to visitation privileges rise and fall with [the prisoner's] rights." (quoting *Rodriguez v. Wilkinson*, No. 3:95 CV 7023, slip. op. at 8 (N.D. Ohio Mar. 1, 1996) (alterations in original))).

In *Overton*, the Supreme Court acknowledged that "*outside the prison context*, there is some discussion in [its] cases of a right to maintain *certain familial relationships,* including association among members of an immediate family and association between grandchildren and grandparents." *Overton*, c (emphases supplied). However, it declined to "attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration." *Id.* at 132. Instead, the Supreme Court found that the prison officials had presented sufficient evidence establishing that the challenged "regulations [bore] a rational relation to legitimate penological interests." *Id.* (citing *Turner*, 482 U.S. at 89). In other words, even assuming that a right of intimate association among family members was not totally extinguished by imprisonment, the Supreme Court upheld the prison officials' limitations on that presumed

right, *see id.* at 136-37, despite how "severe[ly]" they restricted the prisoners' right to receive visits from their own family, including minors. *Id.* at 134.

Because *Overton* did not foreclose the existence of a post-imprisonment right of association under the First and Fourteenth Amendments, and *pro se* pleadings are to be construed to "raise the strongest arguments they suggest," *Triestman v. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted), the Court finds that Plaintiffs have stated a cognizable claim that the indefinite suspension of Knight-Lilly's visitation rights deprived them of a right secured by the Constitution of the United States. *See Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) ("To avoid *sua sponte* dismissal of a § 1983 claim, a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.'" (internal quotation marks omitted in original (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743-44 (2d Cir. 2003))).

Further, because the *Turner* balancing test is fact-intensive, it is ill-suited for resolution at the initial screening phase. *Cf., e.g.*, *McKenzie v. O'Gara*, 289 F. Supp. 2d 389, 391-92 (S.D.N.Y. 2003) (denying defendants' motion to dismiss the complaint as to any claim of denial of contact visits after plaintiff attacked another inmate with a weapon, on the ground that their decision was justified by legitimate penological interests under *Turner v. Safley*; finding that defendants "may well be correct, but their argument is more appropriately made in the context of a motion for summary judgment . . . rather than in a motion addressed to the face of the pleadings"); *Covington v. Mountries*, No. 13-CV-343 VEC, 2014 WL 2095159, at *4 (S.D.N.Y. May 20, 2014) (similar); *Haygood v. Lindquist*, No. 220-CV-02272 JDPPC, 2022 WL 605569, at *2 n.2 (E.D. Cal. Mar. 1, 2022) (rejecting defendants' argument based on *Turner* that complaint should be dismissed under

Rule 12(b)(6) because their actions reasonably relate to a legitimate penological interest (citing *Dunn v. Castro*, 621 F.3d 1196, 1205 n.7 (9th Cir. 2010) (noting the application of *Turner* facts at the Rule 12(b)(6) stage is premature because there is an absence of adequate factual findings))).

Accordingly, the Court will allow the visitation claims based on the constitutional right of association under the First Amendment and/or Fourteenth Amendment to proceed to service against Uhler, Thoms, and Lamanna. The Court notes that, as discussed above in this Order, all of Plaintiffs' claims for injunctive relief have been dismissed as moot because of Lewis's transfer to Elmira. The only remaining claims are for money damages against Uhler, Thoms, and Lamanna in their individual capacities.

### 2.   Procedural Due Process Under the Fourteenth Amendment

In *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454 (1989), the Supreme Court stated that it could not "seriously be contended, in light of [that court's] prior cases—that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause," *id.* at 460, adding that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." *Id.* at 460-61 (internal quotation marks omitted). Focusing on these statements, "[c]ourts in the Second Circuit have consistently held that neither the Due Process Clause nor New York state law create a protected liberty interest for inmates with respect to contact visits." *Sealey*, 2015 WL 9484521, at *4 (quoting *Hernandez v. Sposato*, No. 14-CV-4593 (JFB)(ARL), 2015 WL 4097784, at *4 (E.D.N.Y. July 8, 2015) (collecting cases)). Accordingly, to the extent that Plaintiffs allege a procedural due process claim based on the suspension of Knight-Lilly's visitation privileges, the Court finds that it is based on an indisputably meritless legal theory and must be dismissed with prejudice. *See Neitzke*, 490 U.S. at 327.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no "State [shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It thus "requires the government to treat all similarly situated people alike." *Afr. Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362 (2d Cir. 2002). A viable claim under the Equal Protection Clause requires the plaintiffs to allege that they were treated differently as compared to similarly situated persons, based on intentional or purposeful discrimination. *See Phillip v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Plaintiffs allege that they have been treated differently from other DOCCS inmates and former DOCCS employees. *See* ECF No. 23 ¶ 52; *see also id.* at 16. This does not suffice to allege membership in a protected class. *See Lee v. Governor of State of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996) ("[P]risoners either in the aggregate or specified by offense are not a suspect class . . . ."). Plaintiffs also have not stated a "class of one" equal protection claim. "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). Indeed, the plaintiff and the comparators must be "*prima facie* identical," *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019), meaning that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy[.]" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010).

The Second Circuit has specifically disavowed *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003), which had held under a "now-obsolete pleading standard that a 'class of one' claim is adequately pled ('albeit barely' so) even without specification of others similarly situated."

26

*Ruston*, 610 F.3d at 59.  Because the "pleading standard set out in *Iqbal* supersedes the "general allegation" deemed sufficient in *DeMuria*, a plaintiff cannot state a plausible equal protection claim under a class-of-one theory without specifying comparators. *See id.* at 59-60.

Plaintiffs thus would have to identify other inmates and visitors who allegedly began illicit relationships while the visitor was employed by DOCCS, or at least other inmates or visitors who violated DOCCS rules, policies, and regulations in the past and had been allowed to resume visitation.  They have not done so, however.  The Second Amended Complaint provides no suggestion that, with better pleading, Plaintiffs eventually will be able to state a plausible equal protection claim.  Therefore, the Court finds that amendment would be futile, and the claim is dismissed with prejudice.

### 4.  Eighth Amendment

Lewis asserts that the indefinite suspension of Knight-Lilly's visitation privileges violates the Eighth Amendment, which proscribes the infliction of "cruel and unusual punishments."  U.S. Const.. amend. VIII.  "The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation."  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (collecting cases). As the "constitution does not mandate comfortable prisons[,]" *Rhodes v. Chapman*, 452 U.S. 337, 347 (1980), the Eighth Amendment is only implicated by conditions that "involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), or deprive the prisoner of "the minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 349.  To prevail on an Eighth Amendment claim, the prisoner must plead and prove "both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate

indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Lewis has not alleged either the objective or subjective component of an Eighth Amendment claim. While the suspension of Knight-Lilly's visitation privileges may have made Lewis's confinement "more difficult to bear," *Overton*, 539 U.S. at 136, he has not plausibly alleged that it created inhumane prison conditions or otherwise give rise to any conditions or events that would violate the Eighth Amendment's proscription against cruel and unusual punishments. *See id.* at 136-37 (finding that prison regulation that subjected inmates with two substance-abuse violations to ban of at least two years on visitation with all those outside the prison, subject to their right to apply for a lifting of ban after two years, did not violate Constitutional prohibition against cruel and unusual punishment). Nor has Lewis alleged that any of the DOCCS Defendants acted with deliberate indifference to his health and safety. The Second Amended Complaint provides no suggestion that, with better pleading, Lewis eventually will be able to state a plausible Eighth Amendment claim. Accordingly, the claim is dismissed with prejudice without further leave to amend.

### H.  Plaintiffs' Claims Based on the Fifth Amendment Lack an Arguable Basis in Law

The Fifth Amendment applies only to the federal government and its agents and employees; it does not regulate the activities of state officials. *See Dusenbery v. United Sta*tes, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). The Second Amended Complaint does not name the United States government or any federal agency or employee as a defendant. Therefore, Plaintiffs' claims in the third and sixth causes of action regarding visitation privileges and the right to marry,

to the extent they are premised on the Fifth Amendment's Due Process Clause, "lack[ ] an arguable basis . . . in law," *Neitzke*, 490 U.S. at 325, and are dismissed with prejudice.

## I. Knight-Lilly's Claims Under the Eighth Amendment Lack an Arguable Basis in Law

The Eighth Amendment applies only to convicted prisoners. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.") (alteration in original) (citation omitted).  Therefore, to the extent Knight-Lilly asserts that the DOCCS Defendants violated her Eighth Amendment rights by indefinitely suspending her visitation privileges, such claims assert the "infringement of a legal interest which clearly does not exist," *Neitzke*, 490 U.S. at 327.  Therefore, they "lack[ ] an arguable basis . . . in law," *id.* at 325, and are dismissed with prejudice.

## J. The First and Fourth Causes of Action Alleging Violations of State-Created Regulations Do Not State Cognizable Constitutional Claims

Under the heading for "First Cause of Action," Plaintiffs allege that various Defendants denied them of their "due process rights to state created regulation[s]" in violation of the Fourteenth Amendment.  ECF No. 23 at 16.  In the "Fourth Cause of Action," Lewis asserts that he was denied access to DOCCS grievance procedures. *Id.* at 16-17.

As best as the Court can discern from the Second Amended Complaint, Lewis asserts that (1) OSI Investigator John Doe took property out of his cell without a contraband receipt, *see* ECF No. 23 ¶¶ 15, 18; (2) Kirkpatrick's February 6, 2016 suspension of Knight-Lilly's visitation privileges did not comply with N.Y. Comp. Codes R. & Regs. tit. 7. § 201.4(c)(1)(i)(c) and (d), *see* ECF No. 23 ¶ 19; (3) Polizzi and Heywood failed to hold a hearing or render a decision on Knight-Lilly's appeal within the time required by 7 N.Y.C.R.R. §§ 201.4 and 201.5, *see* ECF No.

23 ¶¶ 23-25, 28; (4) Thoms and Lamanna refused to process Lewis's grievances about Knight-Lilly's suspension of visitation privileges, *id.* ¶¶ 47-49, 54; and (5) the suspension of Knight-Lilly's visitation privileges violated DOCCS Directive #4403, *see* ECF No. 23 ¶¶ 20-21, 33.

It is well settled that "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures.'" *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (ellipsis in original) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)); *see also Doe v. Conn. Dep't of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [a plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."). To the extent Plaintiffs assert that Defendants failed to comply with New York State regulations, this claim has no arguable basis in law.

Lewis's assertion that he has been prevented from using the DOCCS grievance procedures to complain about the suspension of Knight-Lilly's visitation privileges likewise has no arguable basis in law. Although "resort to [DOCCS] . . . grievance process is regarded as protected activity under the First Amendment which insulates inmates against retaliation for engaging in such activity, *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996), there is no constitutional right of access to the established inmate grievance program." *Rhodes v. Hoy*, No. 9:05-CV-836, 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007) (collecting cases); *see also Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) (stating that "[i]nmate grievance programs created by state law are not required by the Constitution" and, as a consequence, "allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"). Moreover, "an inmate has no constitutional right to have his grievances processed or investigated in any particular manner." *Green v. Herbert*, 677 F. Supp. 2d 633, 639 (W.D.N.Y. 2010).

In any event, the applicable New York State regulations *do not permit* an inmate to challenge, via the DOCCS grievance procedure, a visitor's indefinite suspension of visiting privileges. Rather, in such circumstances, "[o]nly the visitor may request a hearing." N.Y. Comp. Codes R. & Regs. tit. 7, § 201.4(c)(1)(iii); *see also* ECF No. 23 at 26 (Ex. C (letter from DOCCS noting that "pursuant to changes in the visiting regulations which became effective in October of 2012, an inmate may not appeal the suspension of a visitor's visiting privileges")). "If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim." *Shell*, 365 F. Supp. 2d at 370 (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("[T]he prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.")). That is precisely what Lewis did here. Relatedly, the grievance restrictions on Lewis did not violate his First Amendment right to petition the government for redress "in light of the fact that [Defendants] did not restrict his right to file civil actions[,]" *Riddick*, 731 F. App'x at 13, such as this one.

Finally, a prison official's noncompliance with a DOCCS directive does not amount to a violation of a state law; rather, the DOCCS directives "merely provide a system which the Commissioner has established to assist him or her in exercising discretion, which he or she retains despite any violation of those directives." *Webster v. Fischer*, 694 F. Supp. 2d 163, 194 (N.D.N.Y. 2010).

Because the First and Fourth Causes of Action alleging violations of Plaintiffs' procedural due process rights are "based on an indisputably meritless legal theory," *Neitzke*, 490 U.S. at 327, they are dismissed with prejudice.

### K. The Seventh Cause of Action Based on Conspiracy Lacks an Arguable Basis in Fact and Law

To state a claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertston*, 200 F.3d 65, 72 (2d Cir. 1999). A conspiracy under 42 U.S.C. § 1985(3) requires an additional element—that the alleged conspirators' actions were motivated by an "invidiously discriminatory animus." *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014). Regardless of the statutory basis, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instance of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

Plaintiffs assert that "[e]ach of the defendants have conspired, colluded[,] and engaged in the violation of the Civil Rights Law Act 79-C [sic], 18 U.S.C. 241-249 [sic]", "inflicted cruel and unusual punishment and a hate crime 42 U.S.C. 1985, First, Fifth, Eighth, Thirteenth, Fourteenth Amendments." ECF No. 23 at 17-18. Plaintiffs appear to have simply inserted the word "conspired" in front of a laundry list of statutes and amendments that Defendants allegedly have violated. This is insufficient to state a cognizable constitutional claim. *See, e.g., Doe v. Selsky*, 973 F. Supp. 2d 300, 305 (W.D.N.Y. 2013) (finding that plaintiff's allegations "that defendants violated his constitutional rights" with a "tacked on" and "generic" allegation that "those violations were committed pursuant to a conspiracy" is "insufficient to make out a § 1985 claim.").

Notably absent from the Second Amended Complaint are any factual allegations remotely suggesting that any of the defendants had "a meeting of the minds" or that they entered into a tacit or express agreement to deprive Plaintiffs of their constitutionally guaranteed rights. Further, the

Second Amended Complaint is devoid of any factual allegations suggesting that any of the defendants' actions were motivated by an invidiously discriminatory animus, such as an intent to discriminate based on race or membership in another protected category. The seventh cause of action asserting that Plaintiffs were victims of a conspiracy is based on wholly conclusory and generalized allegations which do not state a cognizable claim. There is no indication in the Second Amended Complaint that, with better pleading, Plaintiffs eventually will be able to state a nonfrivolous conspiracy claim. Accordingly, it is dismissed with prejudice without further leave to amend.

### L.  Service of Process

Plaintiffs have paid the entire filing fee for this action. As a result, Plaintiffs are responsible for serving the summons and Second Amended Complaint on the remaining defendants. However, Rule 4 of the Federal Rules of Civil Procedure provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). The Clerk of Court will be directed to send to Plaintiffs copies of the Court's "Notice Regarding Service of Summons of Complaint With Attached Request for U.S. Marshal Service."

If Plaintiffs wish to request assistance with service, they must complete the "Request for U.S. Marshal Service" and return it to the Court within **twenty (20) days** of the date of entry of this Order. Plaintiffs are advised that if their Request for U.S. Marshal Service is granted, they must remit advance payment of the service fee ($8.00 per defendant) by money order or certified check payable to "U.S. Marshal." They also must supply copies of this Order, the Second Amended Complaint, and a completed Form USM-285 for each defendant. Plaintiffs are advised that if initial service is unsuccessful, they will be required to pay the United States Marshals

Service any additional fees, also in advance, for subsequent service attempts according to the fee schedule set by the United States Marshals Service.

## CONCLUSION

For the reasons stated above, the following defendants are dismissed based on their lack of personal involvement: Kathy Sheehan, Danielle May, Kevin Bruen, OSI Investigator John Doe, OSI Investigator Jane Doe, and Anthony J. Annucci. The First Amendment claims against S. Peter Feldstein are dismissed as barred by the absolute judicial immunity, and Feldstein is dismissed as a defendant. The Fifth Amendment, Eighth Amendment, and conspiracy claims lack an arguable basis in law or fact and are dismissed with prejudice. Michael Kirkpatrick, Nancy Heywood, and Anthony L. Polizzi are dismissed as defendants because all of the incidents in which they were allegedly involved are barred by the statute of limitations. The Fourteenth Amendment claims based on alleged violations of state law are not cognizable under Section 1983 and are dismissed with prejudice. The Fourteenth Amendment claims asserting violations of the procedural due process clause and the equal protection clause are dismissed with prejudice. The Fourteenth Amendment claim asserting the denial of the right to marry are dismissed without prejudice as premature. The claims for prospective injunctive or declaratory relief against Donald Uhler, Matthew Thoms, and Amy Lamanna in their official and individual capacities are dismissed as moot. The claims for retrospective relief against Uhler, Thoms, and Lamanna in their official capacities are dismissed as barred by the Eleventh Amendment. The claim that the indefinite suspension of Knight-Lilly's visitation privileges violates the right of association, grounded in the First Amendment and/or Fourteenth Amendment, may proceed to service against Uhler, Thoms, and Lamanna to the extent it asserts retrospective relief against these defendants in their individual capacities.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that the claim asserting that the indefinite suspension of Knight-Lilly's visitation privileges violates Plaintiffs' right of association, grounded in the First Amendment and/or Fourteenth Amendment, MAY PROCEED TO SERVICE against Uhler, Thoms, and Lamanna to the extent it asserts retrospective relief against these defendants in their individual capacities; and it is further

ORDERED that the Fourteenth Amendment due process claim asserting the denial of the right to marry is DISMISSED WITHOUT PREJUDICE as premature; and it is further

ORDERED that the remainder of the Second Amended Complaint is DISMISSED WITH PREJUDICE as to Lewis pursuant to 28 U.S.C. § 1915A(b) and as to Knight-Lilly pursuant to the Court's inherent authority; and it is further

ORDERED that the Clerk of Court is directed to update the caption to reflect that the full name of Defendant Thoms is "Matthew Thoms"; and it is further

ORDERED that the Clerk of Court is directed to terminate Kathy Sheehan, Danielle May, Kevin Bruen, OSI Investigator John Doe, OSI Investigator Jane Doe, New York State Police Investigator John Doe, Anthony J. Annucci, S. Peter Feldstein, Anthony L. Polizzi, Nancy Heywood, and Michael Kirkpatrick as parties, and update the caption accordingly; and it is further

ORDERED that the Clerk of Court is directed to send to Plaintiffs copies of the Court's "Notice Regarding Service of Summons of Complaint With Attached Request for U.S. Marshal Service"; and it is further

ORDERED that if Plaintiffs wish to request assistance from the United States Marshals Service Marshal in serving the remaining defendants, they must, within **twenty (20) days** of the

date of entry of this Order, file a completed and signed request for service by the United States Marshals Service, at which time the Court will review the request.  If the request is granted, the Court will issue an order providing further instructions to Plaintiffs; and it is further

ORDERED that if Plaintiffs do not request assistance with service of process within **twenty (20) days** of the filing date of this Order, the Clerk of Court shall issue summonses for Donald Uhler, Matthew Thoms, and Amy Lamanna, and forward them to Plaintiffs, who shall be responsible for effecting service of process on these defendants.

SO ORDERED.

Dated:          December ___, 2022
                Rochester, New York

                                          _____
                                          HONORABLE FRANK P. GERACI, JR.
                                          UNITED STATES DISTRICT JUDGE
                                          WESTERN DISTRICT OF NEW YORK

36