UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROMMEL LEWIS, et al.,

                                                               Plaintiff,         Case # 21-CV-6738-FPG

v.                                                                         DECISION & ORDER

T. DELMAR, et al.,

                                                              Defendants.

## INTRODUCTION

Plaintiff Rommel Lewis, *pro se*, brings this civil rights action against Defendants Amy Lamanna, Matthew Thoms, and Donald Uhler. ECF No. 23. Currently before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] ECF No. 38. Plaintiff has not filed an opposition to the motion. For the reasons that follow, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

In addressing a Rule 12(b)(6) motion to dismiss, the Court "assum[es] all well-pleaded, nonconclusory factual allegations in the complaint to be true[,]" *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 33 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), but it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations," *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although detailed allegations are not required, "a complaint must contain sufficient factual matter,

---

[1] Although captioned as a motion for summary judgment, Defendants cite to Rule 12(b)(6), request that the amended complaint be dismissed, and state that they "reserve the right" to file a summary judgment motion in the future. ECF No. 38-1 at 5. Accordingly, the Court will treat the motion as seeking dismissal pursuant to Rule 12(b)(6). *See Hart v. Artus*, No. 16-CV-6808, 2021 WL 3022293, at *8 (W.D.N.Y. July 16, 2021) (construing a motion as seeking dismissal where it cited to Rule 12(b)(6) despite being originally labeled as a motion for summary judgment, "apparently due to an editing oversight").

accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotation marks omitted). A claim will be considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court reviewing a 12(b)(6) motion "must take the allegations as true, no matter how skeptical the court may be," the exception being "allegations that are sufficiently fantastic to defy reality as we know it." *Iqbal*, 556 U.S. at 696. "In reviewing a motion to dismiss, we may consider [not only] the facts alleged in the complaint, [but also] documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Sabir v. Williams*, 52 F.4th 51, 54 (2d Cir. 2022) (internal quotation marks omitted); *see also Moco v. Janik*, No. 17-CV-398, 2019 WL 3751628, at *3 (W.D.N.Y. Aug. 8, 2019) ("When a court considers a Rule 12(b)(6) motion, it may consider documents that are attached to, incorporated by reference in, or integral to the complaint; and it may also consider matters that are subject to judicial notice." (internal quotation marks omitted)).

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established

elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Although Plaintiff has failed to respond to the motion to dismiss, this "does not by itself merit dismissal of [the] complaint." *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *2 (S.D.N.Y. Mar. 11, 2014) (citing *Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010)). Even though the motion is unopposed, "the Court remains obligated to review the pleadings and determine whether there is a sufficient basis for granting the motion." *Groenow*, 2014 WL 941276, at *2. Additionally, courts must read a *pro se* litigant's pleadings with "special solicitude" and interpret them to raise the strongest claims they could suggest. *Id.* (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)).

**BACKGROUND**

The Court has, in a previous order, already provided a recitation of the facts found in Plaintiff's Second Amended Complaint. *See* ECF No. 24 at 5-9. The Court will provide a brief summary of the facts below; to the extent that a detailed recounting of the record is needed, the Court refers to its prior order.

In February 2016, Plaintiff submitted a marriage request to the Superintendent of Clinton Correctional Facility ("Clinton"), where Plaintiff was confined. ECF No. 23 ¶ 9. Plaintiff sought to marry Keisha Knight-Lilly, a former New York State Department of Corrections and Community Supervision ("DOCCS") employee who had resigned her position. *Id*. at 26. The Superintendent approved the marriage request, but subsequently suspended Knight-Lily's visitation privileges indefinitely "[b]ased on an Office of Special Investigations investigation" into Knight-Lilly's interactions with Plaintiff while she was still a DOCCS employee. *Id*. ¶¶ 10-12, 24. In March 2019, after Plaintiff was transferred to Upstate Correctional Facility, Uhler notified

Knight-Lilly that her visitation privileges were suspended indefinitely due to her status as a former DOCCS employee. *Id*. ¶¶ 32-34. In January, after Plaintiff was transferred to Five Points, then-Superintendent Thoms declined to change Knight-Lilly's visitation status. *Id*. ¶ 46. Lamanna subsequently succeeded Thoms as Superintendent of Five Points, and again declined to change Knight-Lilly's visitation privileges because of her being a former DOCCS employee. *Id*. ¶¶ 50-51. Lamanna also informed Plaintiff that the Inmate Grievance Review Committee staff would return any grievance he submitted about Knight-Lilly's ability to visit. *Id*. ¶ 52.

In November 2021, Plaintiff brought this action with Knight-Lilly as a co-plaintiff. *See* ECF No. 2. Plaintiff filed an amended complaint, ECF No. 10, and a Second Amended Complaint,[2] ECF No. 23. In January 2023, the Court dismissed most of Plaintiff's claims but permitted Plaintiff's right-to-intimate association claim under the First and Fourteenth Amendment to proceed. ECF No. 24. In January 2024, the Court terminated Knight-Lilly as a plaintiff due to her failure to apprise the Court of her new address or respond to the Court's order to show cause. ECF No. 30.

In April 2024, Defendants filed the instant motion, arguing that the Second Amended Complaint should be dismissed on qualified immunity grounds. ECF No. 38. The Court notified Plaintiff of the motion and mailed said notice to Plaintiff. ECF No. 39. Plaintiff has not responded, nor has the notice been returned as undelivered.

## DISCUSSION

"It is well settled in this Circuit that a defendant's ability to rely on qualified immunity from liability is a question of law for the court to decide *only* when the facts are not in dispute." *Flores v. City of New York*, No. 21-CV-1680, 2022 WL 4705949, at *10 (S.D.N.Y. Aug. 8, 2022),

---

[2] Although the pleading, ECF No. 23, is captioned as a "First Amended Complaint," it is the Second Amended Complaint, and the Court will refer to it as such in this Order.

*report and recommendation adopted*, 2022 WL 4592892 (Sept. 30, 2022) (citing *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)); *see also Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990) ("Once disputed factual issues are resolved, the application of qualified immunity is . . . ultimately a question of law for the court to decide."). Although qualified immunity claims "should be decided as early as possible in a case," it "is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013); *see also McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004) ("[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted.").

"[B]y presenting [their] immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment[, the defendants] must accept the more stringent standard applicable to this procedural route." *McKenna*, 386 F.3d at 436. "Briefly summarized, we accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, including both those that support the claim and those that defeat the immunity defense." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (internal quotation marks omitted). "The defense will succeed only where entitlement to qualified immunity can be established based solely on facts appearing on the face of the complaint." *Smith v. Arrowood*, No. 21-CV-6318, 2022 WL 3927884, at *8 (W.D.N.Y. Aug. 31, 2022) (internal quotation marks and alterations omitted). "But that does not mean that qualified immunity can never be established at the pleading stage. To the contrary, every case must be assessed on the specific facts alleged in the complaint." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015). Rather, a dismissal under Rule 12(b)(6) on qualified immunity grounds "may be appropriate where, for example, a defendant can demonstrate that, as a matter of law, the constitutional right that is alleged to have been violated was not clearly established at the time of

the alleged violation." *Hart v. Artus*, No. 16-CV-6808, 2021 WL 3022293, at *14 (W.D.N.Y. July 16, 2021) (internal quotation marks omitted).

"To decide whether to grant a public official's motion [to dismiss] based on qualified immunity, courts ask two questions: (1) whether the facts, viewed in the plaintiff's favor, show that the official's conduct violated a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the alleged violation." *Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086, 2021 WL 5086405, at *7 (W.D.N.Y. Nov. 2, 2021). Rather than take these questions in sequence, a court "may determine that any constitutional violation was not clearly established" without deciding whether a constitutional violation occurred. *Brown v. City of N.Y.*, No. 13-CV-1018, 2016 WL 1611502, at *4 (S.D.N.Y. Apr. 20, 2016), *aff'd*, 862 F.3d 182 (2d Cir. 2017).

To answer the question of whether a right was "clearly established" at the relevant time, a court in this Circuit considers whether "(1) the right was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Bailey v. Pataki*, 708 F.3d 391, 404-05 (2d Cir. 2013). "The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. Although case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Wills v. Microgenics Corp.*, No. 20-CV-4432, 2021 WL 3516419, at *4 (E.D.N.Y. Aug. 10, 2021) (internal quotation marks, brackets, and citations omitted). "In making this determination," a court in this Circuit considers "Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020).

The Court has construed Plaintiff's amended complaint as raising a right-to-intimate-association claim. *See* ECF No. 25 at 21-25; *see also Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) ("[A] spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); *King v. Keyser*, No. 18-CV-11301, 2020 WL 168285, *4 (S.D.N.Y. Jan. 13, 2020) (construing a right-to-intimate-association claim where plaintiff alleged she was unable to participate in family reunion programs with her prisoner husband). Specifically, the Court interprets the amended complaint as claiming that Defendants violated his right to "the choice to enter into and maintain certain intimate human relationships without undue intrusion by the State." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 57 (2d Cir. 2014) (internal quotation marks and alterations omitted). Although "the general right to intimate association has been clearly established" in prior caselaw, *Patel v. Searles*, 305 F.3d 130, 139 (2d Cir. 2002), "qualified immunity does not turn on general propositions," *Ranta v. City of New York*, No. 14-CV-3794, 2015 WL 5821658, at *6 (E.D.N.Y. Sept. 30, 2015). "Rather, the essential question is whether, [at the time of the alleged events], the [r]ight was established in a particularized sense so that the contours of the right [would have been] clear to a reasonable official." *Id*. (internal quotation marks omitted).

Plaintiff has not responded to Defendants' qualified immunity argument, and therefore has not provided the Court with any Supreme Court or Second Circuit precedent to suggest a prisoner's right to intimate association with a partner or spouse is well-established. From the Court's own research, however, no such precedent appears to exist. *See Alvarez v. Bause*, No. 22-CV-186, 2023 WL 1765415, at *5 (N.D.N.Y. Feb. 3, 2023) ("[T]he Court in unaware of any case law in the Second Circuit addressing the boundaries of the Right to Intimate Association for inmates."); *see*

*also King*, 2020 WL 168285, *4 ("Plaintiff's right to full-contact visitation with her spouse in prison has not been clearly established."). When addressing this issue via summary order, the Second Circuit concluded that "[c]ases in this circuit [] have not clearly established a right to spousal visitation in prison" and accordingly affirmed that "qualified immunity [wa]s appropriate" for a right-to-intimate-association claim. *Malave v. Weir*, 750 F. App'x 65, 67, 67 n.3 (2d Cir. 2019).[3] In light of this, and in the absence of any contrary case law, the Court agrees with Defendants that qualified immunity is appropriate here because Plaintiff's right to intimate association was not clearly established.

Even though qualified immunity is appropriate, however, that does not end the inquiry. Qualified immunity "protects government officials from suits brought against them in their individual capacity for money damages," *Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020), but it "does not protect a public official against a claim for declaratory or injunctive relief," *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013). In the Second Amended Complaint, Plaintiff seeks not only money damages, but also the restoration of Knight-Lilly's visitation privileges, permission to have a marriage ceremony, participation in the Family Reunion Program, and an apology letter. ECF No. 23 at 18-19. Defendants do not acknowledge this in their motion to dismiss and the record does not reflect that Plaintiff's claims for non-monetary relief were mooted or abandoned. Accordingly, the Court will grant Defendants' motion to dismiss only as to Plaintiff's claims for money damages and will allow Plaintiff's claims for injunctive and declaratory relief to proceed.

---

[3] The Court does note that, in an earlier unpublished summary order, the Second Circuit stated that "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation." *Mills v. Fischer*, 497 F. App'x 114, 116 (2d Cir. 2012) (summary order). District courts addressing the issue of prisoner right-to-intimate-association have found, however, that this statement "was (i) dicta, (ii) equivocal, (iii) appeared in an unpublished, non-precedential summary order, and (iv) relied on cases that have nothing to do with prison visitation." *King*, 2020 WL 168285, *4. At any rate, the Second Circuit acknowledged in *Malave* that the statement in *Mills* did not serve to create clearly established law. *See Malave*, 750 F. App'x at 67 ("In any event, [*Mills*] does not have precedential value and therefore does not create clearly established law.").

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss (ECF No. 38) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for punitive and compensatory damages are DISMISSED WITH PREJUDICE. Plaintiff's claims for injunctive and declaratory relief will proceed. Defendants must file an answer within 21 days of entry of this Order.

IT IS SO ORDERED.

Dated: October 8, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York